### JACK DUNN v. STATE.

No. A-4683.   Opinion Filed April 4, 1925.
(234 Pac. 784.)

(Syllabus.)

**Evidence—Illegal Search and Conflict in Analyses of Liquor Rendering Conviction Erroneous.** Held that, upon the showing made by the record as a whole, the defendant was not accorded such a fair and impartial trial as is contemplated by law.

Appeal from County Court, Caddo County; R. L. Lawrence, Judge.

Jack Dunn was convicted of the unlawful possession of intoxicating liquor, and he appeals. Reversed and remanded.

Morgan & Osmond, for plaintiff in error.

The Attorney General and V. P. Crowe, Asst. Atty. Gen., for the State.

BESSEY, P. J. The plaintiff in error, Jack Dunn, here referred to as the defendant, was charged with the illegal possession of 229 pint bottles and 40 gallons of home brew beer, with the unlawful intent to barter and sell the same. By verdict of a jury he was found guilty, and his punishment was assessed at confinement in the county jail for a period of 30 days, and to pay a fine of $500.

There were some peculiar and unusual situations developed in this case. The defendant's home was searched by certain peace officers under authority of a search warrant, predicated upon an affidavit for a search warrant void on its face, in that the affiant stated conclusions and belief merely, without stating any facts in support thereof.

The return of the officer who executed this search warrant recited that he had destroyed the 40 gallons and 229 pint bottles of liquor seized. In conflict with the statement made in the officer's return on the search warrant, the officers, during the course of the trial, testified that they saved 6 bottles of this home brew beer for evidence, and that these 6 bottles were placed in a locker with other liquors of various kinds, in charge of the sheriff; that subsequently the tops of two of the bottles came off; that one of the remaining 4 bottles was sent to a chemist, C. V. Nichols at Anadarko, for analysis.

This witness qualified as an expert on analysis by showing that he had studied chemistry and done quantitative analysis in the University of Oklahoma, of which he was a graduate; that he had done postgraduate work in chemistry in the University of Michigan; that

he was a graduate of the School of Pharmacy of the University of Oklahoma, and had taught chemistry in the College of Pharmacy at Kansas City. His report on the bottle of liquor he had analyzed showed an alcoholic content of 8 per cent. There was some controversy about the identity of this bottle, whereupon the court continued the trial and by agreement of parties two other bottles were labeled and sent for analysis to Dr. Edwin De Barr, then head of the chemistry department of the University of Oklahoma. Dr. De Barr's analysis showed no alcoholic content whatever.

According to the record, both chemists were eminent in their profession, and from the result of their respective analyses it would appear that the six bottles reserved for evidence, or some of them (if they were so reserved), must have been inadvertently confused with other bottles in the locker; or that some of these bottles must have been purposely replaced with bottles of beer procured elsewhere; and that a fraud was perpetrated upon the court, or upon the defendant, or both.

It has been suggested by the Attorney General that, conceding that the search warrant was void, since the defendant made no objection to the search he waived his immunity from an illegal search and seizure. Without going into details, we doubt from what appears in the record that there was any such waiver.

The conflict in the evidence as to the alcoholic content of these sample bottles of the liquor here at issue, under the circumstances, did not raise a question of the credibility of the expert witnesses; both chemists were well qualified to make such analysis and there is nothing tending to impeach the analysis of e i t h e r of them. There had certainly been either an intentional substitution or an inadvertent mingling of these bottles with others in the locker.

Without basing our conclusions wholly upon either of the irregularities treated, we hold that the defendant was not accorded such a fair and impartial trial as is contemplated by law. There are other irregularities appearing in the record which strengthen this conclusion.

The judgment of the trial court is reversed, and the cause remanded.

DOYLE, J., concurs.

EDWARDS, J., absent, and not participating.